UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MADISON PUGH,  )
 )
       Plaintiff,  )
 )
v.  )  Civil Action No. 10-1016 (RLW)
 )
FEDERAL BUREAU OF  )
INVESTIGATION,  )
 )
       Defendant.  )
 )

**MEMORANDUM OPINION**

Plaintiff brings this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, against the Federal Bureau of Investigation ("FBI").[1] This matter is before the Court on defendant's motion to dismiss or, in the alternative, for summary judgment. For the reasons discussed below, the motion will be granted.

I.    BACKGROUND

Plaintiff was convicted of conspiracy to distribute and to possess with intent to distribute cocaine and cocaine base in violation of 21 U.S.C. § 846, and currently is serving a term of life imprisonment. *See United States v. Pugh*, No. 96-3954, 1998 WL 165143, at *1 (6th Cir. 1998).

---

[1] For purposes of the FOIA, the term "agency" includes "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the Executive Branch of the Government . . ., or any independent regulatory agency." 5 U.S.C. § 552(f)(1). The DOJ is an executive agency to which the FOIA applies, and the Court considers the DOJ the proper party defendant to this action. For convenience, however, the Court will refer to the defendant as the FBI.

1

Federal agents arrested him after "execut[ing] several search warrants, including a warrant executed at [plaintiff's] residence" in Akron, Ohio. *Id.* Special Agent James Hummel of the Drug Enforcement Administration ("DEA") apparently obtained the search warrant for plaintiff's residence based on information provided by two confidential informants. *See* Memorandum of Opinion and Order Denying Petitioner's Rule 60(b) Motion, *Pugh v. United States*, No. 1:99cv1546 (N.D. Ohio Aug. 20, 2004) at 3.

Between June 2006 and June 2009, plaintiff submitted four FOIA requests to the FBI seeking the identities of these two confidential informants, designated CS 4 and CS 5, who allegedly supplied information to Special Agent Hummel. *See* Mem. of P. & A. in Supp. of Def.'s Mot. to Dismiss or, in the Alternative, for Summ. J. (Def.'s Mem.), Decl. of David M. Hardy ("Hardy Decl.") ¶¶ 5, 8, 13-14. As an example, plaintiff's first request read:

> SPECIFICLY [sic] THE IDENTIFICATION OF DEA (SA) JAMES HUMMEL'S CONFIDENAL [sic] SOURCES NO. 4 AND 5 AS MENTION [sic] AS TO HAD PROVIDED INFORMATION RELATING TO MADISON PUGH IN AGENT HUMMEL'S 1995 AFFIDAVIT [illegible] 5:95-0511 IN THE CLEVELAND DISTRICT COURT. C.S. 4 AND 5 STATEMENTS APPEAR ON PAGES 12, 13, AND 14 OF SAID AFFIDAVIT. THESE STATEMENTS ARE RELATED DIRECTLY TO THE REQUESTER. NO OTHER INFORMATION OTHER THAN THESE NAMES IS NEEDED!!

*Id.*, Hardy Decl., Ex. A (Freedom of Information/Privacy Act Request dated June 5, 2006) (emphasis in original). On each occasion, the FBI declined to process the request without proof of the third parties' death or a privacy waiver. *Id.*, Hardy Decl. ¶¶ 6, 9, 15-16; *see id.*, Ex. B, E and K (Letters to plaintiff from D.M. Hardy, Section Chief, Records Information and Dissemination Section, Records Management Division, FBI, dated, respectively, April 17, 2007,

June 7, 2007, and August 13, 2009). Rather, the FBI neither confirmed nor denied the existence of records responsive to the requests. *See, e.g., id.*, Hardy Decl., Ex. B ("This response should not be considered an indication of whether or not records responsive to [plaintiff's] request exist in FBI files."). Even if such records existed, the FBI asserted that the information would be exempt from disclosure under FOIA Exemptions 6 and 7(C). *See id.*, Hardy Decl. ¶¶ 6, 9, 15-16. Plaintiff pursued administrative appeals, *id.* ¶¶ 7, 10 and 17, without success, *id.* ¶¶ 12, 22; *see id.*, Ex. H and Q (Letters to plaintiff from J.G. McLeod, Associate Director, Office of Information and Privacy, dated, respectively, October 17, 2007 and February 22, 2010).

Plaintiff alleges that the refusal to disclose the requested information deprives him of rights guaranteed by the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, Compl. at 1-2, and has "result[ed] in the imprisonment of an actually innocent human being."[2] *Id.* at 2. In this FOIA action, he "requests release of the requested documents."[3] *Id.* at 3.

---

[2] To the extent that plaintiff attempts to bring constitutional claims against either Janice Galli McLeod (whom the Court already has dismissed as a party defendant) under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 (1971), or against the United States under the Federal Tort Claims Act, *see* 28 U.S.C. §§ 2671-80, such claims must be dismissed. *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 478 (1994) ("[T]he United States simply has not rendered itself liable under [the FTCA] for constitutional tort claims."); *Johnson v. Exec. Office for U.S. Attorneys,* 310 F.3d 771, 777 (D.C. Cir. 2002) (affirming dismissal of *Bivens* claim against a federal government official who allegedly mishandled a FOIA request purportedly in violation of requester's Fifth Amendment right to due process because "the comprehensiveness of FOIA precludes the creation of a *Bivens* remedy"). Accordingly, the Court will grant defendant's motion to dismiss for lack of subject matter jurisdiction over plaintiff's constitutional tort claims, and for failure to state a *Bivens* claim upon which relief can be granted.

[3] In addition to the release of all requested records, plaintiff demands "compensatory damages in the sum/amount of $ 7 Million Dollars in United States currency." *Id.* at 3.

3

## II. DISCUSSION

### A. *Summary Judgment in a FOIA Case*

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . , the court may . . . grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." FED. R. CIV. P. 56(e). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[A] material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on an element of the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits his own affidavits, declarations or documentary evidence to the contrary. *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).

In a FOIA case, the Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations if they are relatively detailed and when they describe "the documents and the justifications for nondisclosure with reasonably specific detail . . . . and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981. Agency affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard*

---

Monetary damages are not available under the FOIA, *see Ross v. United States*, 460 F. Supp. 2d 139, 151 (D.D.C. 2006) ("It is well-settled that monetary damages are not available under FOIA."); *see also Anderson v. Fed. Bureau of Prisons*, No. 10-0413, 2011 WL 346079, at *2 (Feb. 3, 2011) (denying motion to amend complaint raising a FOIA claim to add a demand for damages), and this claim will be dismissed.

*Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. Cent. Intelligence Agency*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

### B. The FBI Properly Responded to Plaintiff's FOIA Requests

Exemption 7(C) protects "records or information compiled for law enforcement purposes, but only to the extent that the [their] production . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy[.]" 5 U.S.C. § 552(b)(7)(C).[4] "[T]he 7(C) exemption recognizes the stigma potentially associated with law enforcement investigations and affords broader privacy rights to suspects, witnesses, and investigators." *Bast v. U.S. Dep't of Justice*, 665 F.2d 1251, 1254 (D.C. Cir. 1981); *Stern v. Fed. Bureau of Investigation,* 737 F.2d 84, 91-92 (D.C. Cir. 1984) (noting individuals' "strong interest in not being associated unwarrantedly with alleged criminal activity"); *see also Holt v. U.S. Dep't of Justice*, 734 F. Supp. 2d 28, 44 (D.D.C. 2010) (affirming agency decision to withhold names, telephone numbers, dates of birth, and nickname of persons who provided information to law enforcement officers and persons "only incidentally mentioned" in law enforcement records, citing "the stigma of being associated with any law enforcement investigation").

The FBI asserts, and plaintiff does not dispute, that the FBI is a law enforcement agency and that the records at issue, if any, were compiled for law enforcement purposes. The FBI's declarant states that plaintiff "was investigated by the FBI, and subsequently [was] convicted" of drug-related offenses. Def.'s Mem., Hardy Decl. ¶ 26. He represents that CS 4 and CS 5 "served

---

[4] The Court concludes that all the records responsive to the plaintiff's request, assuming that such records exist, would have been compiled for law enforcement purposes. Accordingly, the Court addresses the withholding of this law enforcement related information under Exemption 7(C) only, without considering whether this same information properly has been withheld under Exemption 6. *See Simon v. Dep't of Justice*, 980 F.2d 782, 785 (D.C. Cir. 1992).

as confidential informants for the DEA and that information provided to the DEA was, in turn, provided to the FBI." *Id.* Accordingly, "[a]ny records the FBI would have related to these individuals in that capacity, if such records even exist, would have been specifically compiled for law enforcement purposes and would relate directly to, and would be a product of, the FBI's investigation of violations of the United States Code for which the FBI has investigative responsibility." *Id.*

The FBI construed plaintiff's requests as "requests which seek access to investigatory records concerning a third party."[5] Def.'s Mem., Hardy Decl. ¶ 32; *see id.* ¶¶ 6, 9, 15-16. In these circumstances, "the FBI's policy is to neither confirm nor deny that it has responsive records unless the requester provides a notarized authorization (privacy waiver) from the third party, provides proof of death, or demonstrates a public interest in the records that is sufficient to outweigh that third party's individual privacy rights." *Id.* ¶ 32. This so-called Glomar response is designed to "protect the privacy rights of individuals, particularly those who appear in FBI files."[6] *Id.* The FBI's declarant explains:

---

[5] Regulations regarding the submission of FOIA request to Justice Department components provide:

> If you are making a request for records about another individual, either a written authorization signed by that individual permitting disclosure of those records to you or proof that that individual is deceased (for example, a copy of a death certificate or an obituary) will help the processing of your request.

28 C.F.R. § 16.3(a).

[6] *See Phillippi v. Cent. Intelligence Agency*, 546 F.2d 1009, 1011 (D.C. Cir. 1976) (describing background of FOIA case arising from request for information about "the Hughes Glomar Explorer, a large vessel publicly listed as a research ship owned and operated by the

> An individual's association with a criminal investigation, as a suspect, victim, witness or source, tends to stigmatize that individual. Even if the individual was a witness on the record, an official acknowledgment of that association with an investigation is likely to lift that association out of practical obscurity (particularly if the testimony occurred a significant number of years ago) and into the forefront of public awareness, further aggravating the stigma associated with such a disclosure. Accordingly, the FBI considers acknowledging the existence of investigatory records pertaining to an individual without [his] consent, proof of death or a showing of public interest as constituting a clearly unwarranted . . . invasion of personal privacy.

*Id.* If a requester does not submit a privacy waiver or proof of death, in deciding whether to release third party information, "the FBI next conducts a balancing test to determine if the alleged public interest outweighs the privacy interests of the third party whose records are being requested." *Id.* ¶ 33.

In this case, because plaintiff submitted neither privacy waivers nor proof of death for CS 4 and CS 5, the FBI "had to determine whether the plaintiff's asserted public interest in disclosure of these records outweighed the privacy interests" of these individuals. Def.'s Mem., Hardy Decl. ¶ 34. "Inherent in [the FBI's] 'Glomar' response [was] its conclusion that the privacy interests of these two individuals outweighed any public interest in disclosure, which plaintiff failed to articulate in any event." *Id.*

Plaintiff responds by asserting a public interest in "the government's integrity" arising from the alleged "practice of hiding evidence and convicting innocent people." Pl.'s Opp'n [Dkt.

---

Summa Corporation," which allegedly was owned and operated by the United States government). A government agency may provide a Glomar response to a FOIA request for information about third parties under Exemption 7(C) "in place of a statement acknowledging the existence of responsive records but withholding them, if confirming or denying the existence of the records would associate the individual named in the request with criminal activity." *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 893 (D.C. Cir. 1995).

#15] at 3; *see id.* at 12. Plaintiff opines that CS 4 is Demetrius Parker, *see id.* at 8-9, and that the information Parker provided to Special Agent Hummel "was lacking in truthfulness." *Id.* at 9. Specifically, plaintiff alleges that Parker "falsely attributed" ownership of 5 kilograms of cocaine to plaintiff and that Special Agent Hummel failed to advise the magistrate judge of this error, resulting in the issuance of a search warrant based on a false affidavit. *Id.* at 10. In addition, plaintiff asserts that CS 4 and CS 5 "both testified during trial," and thus "they could not reasonably expect confidentiality." *Id.* at 11. Neither argument has any basis in governing law.

"[W]hether disclosure of a . . . document under Exemption 7(C) is warranted must turn on the nature of the requested document and its relationship to the basic purpose of the [FOIA] to open agency action to the light of public scrutiny rather than on the particular purpose for which the document is being requested." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 498 U.S. 749, 772 (1989) (quoting *Dep't of Air Force v. Rose,* 425 U.S. 352, 372 (1976) (internal quotation marks omitted). A requester might overcome an individual's privacy interests if, for example, he offers "compelling evidence that the agency denying the FOIA request is engaged in illegal activity." *Computer Professionals for Social Responsibility v. U.S. Secret Serv.*, 72 F.3d 897, 905 (D.C. Cir. 1996) (quoting *Davis v. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992)). Plaintiff's unsupported assertion of government wrongdoing is far less than is needed to demonstrate "that the public interest sought to be advanced is a significant one," and that release of the requested information "is likely to advance that interest." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).

Moreover, it appears that the disclosure of the informants' identities promotes plaintiff's private interest, not the general public's interest in the FBI's performance of its law enforcement

functions.  According to plaintiff, the FBI's "refusal to release requested documents" makes it "responsible for violating the plaintiff's right to due process, actual innocence, due process of exculpatory evidence, 8th amendment right from cruel and unusual punishment, 6th amendment right of confrontation and compulsory due process and equal protection rights to meaningful ac[c]ess to the courts."  Pl.'s Opp'n at 1 (page numbers designated by plaintiff) (emphasis removed).  That the FBI's denial of his FOIA requests may hinder his efforts to challenge his conviction or sentence, *see id.* at 4, 8-12, is irrelevant.  *See Oguaju v. United States,* 378 F.3d 1115, 1116-17 (D.C. Cir. 2004).  "The courts have consistently refused to recognize any public interest in disclosure of information to assist a convict in challenging his conviction."  *Burke v. U.S. Dep't of Justice*, No. 96-1739, 1999 WL 1032814, *4 (D.D.C. Sept. 30, 1999).

Plaintiff cannot overcome the informants' privacy interests by claiming that he already knows their identities.  *See Wiggins v. Nat'l Credit Union Admin.*, No. 05-2332, 2007 WL 259941, at *8 (D.D.C. Jan. 30, 2007) (rejecting requester's challenge to Glomar response notwithstanding fact that "some of the third party information was disclosed at [his] criminal trial"); *Fischer v. U.S. Dep't of Justice*, 596 F. Supp. 2d 34, 48 (D.D.C. 2009) (affirming FBI's Glomar response to request for records pertaining to third parties involved in requester's criminal trial, including cooperating witnesses); *Butler v. Drug Enforcement Admin.,* No. 05-1798, 2006 WL 398653, at *4 (D.D.C. Feb. 16, 2006) (upholding a Glomar response even though third parties were known to requester and testified at his criminal trial).  Nor does the passage of time diminish their privacy interests.  *See Halpern v. Fed. Bureau of Investigation*, 181 F.3d 279, 297 (2d Cir. 1999).

III. CONCLUSION

For the reasons discussed herein, the Court concludes that the FBI properly construed plaintiff's FOIA request as one for third-party information maintained in law enforcement records and that its Glomar response was proper under the circumstances.  Accordingly, defendant's motion to dismiss and for summary judgment will be granted.  An Order is issued separately.

DATE: June 23, 2011
/s/
ROBERT L. WILKINS
United States District Judge